'Turner, J.,
 

 dissenting. The place to start to find the state’s authority in respect of presidential electors is the Constitution of the United States.
 

 Section 1, Article II, provides in part as follows:
 

 “Each
 
 state
 
 shall appoint,
 
 in such manner as the legislature thereof mag direct,
 
 a number of electors, equal to the whole number of senators and representatives to which the state may be entitled in the Congress; but no senator or representative, or person holding an office of trust or profit under the United States, shall be appointed an elector.” (Italics ours.)
 

 Here, then, is the state’s authority to appoint presidential electors.
 

 _The General Assembly has exercised that authority as follows:
 

 Section 4785-4, General Code, provides in part:
 

 “General elections in the state of Ohio and its political subdivisions shall be held as follows:
 

 “a. For the election of electors of president and vice-president of the United States, in the year of 1932 and every four years thereafter.”
 

 Section 4785-74, General Code, provides in part:
 

 “At each such state convention of each political party persons shall be nominated as candidates for election as presidential electors to be voted for at the next succeeding general election, * * *
 

 “Within five days after the holding of each such convention the chairman and secretary thereof shall
 
 *155
 
 certify in writing to the Secretary of State the names of all persons nominated at snch convention as candidates for election as presidential electors.”
 

 Section 4785-61, General Code, defining a political party, will be set ont later.
 

 Section 4785-107, General Code, provides as follows:
 

 “On the presidential ballot shall be printed the names of the candidates for election to the offices of president and vice-president of the United States, nominated as such by the national conventions of those political parties to which delegates and alternates were elected at the nest preceding primary election.
 

 “Such ballots shall' have printed across the top thereof, and below the stubs, the words: ‘Official Presidential Ballot.’
 

 ‘ ‘ The names of such candidates of each such political party shall comprise the ‘ticket’ of such political party. The ticket of each such political party shall be printed in a separate vertical column on the ballot. At the top of each such party column shall be printed, upon a shaded background, the emblem of the political party whose ticket is printed in such column. Immediately below such emblem shall be a blank circular space three-fourths of an inch in diameter enclosed by a heavy black line and surrounded by the words: ‘To vote a straight ticket place “X” within this circle.’ Immediately below such circle and within heavy horizontal lines across the width of the column shall be printed in capital letters the name of the political party, whose emblem is printed in such column, followed by the word: ‘Ticket.’ In a rectangular space immediately below the name of the political party shall be printed the names of the candidates of such party for election to the office of president and vice-president, respectively, of the United States, nominated as such as above provided. The name of the candidate for president shall be
 
 *156
 
 printed above the name of the candidate for vice-president. Above the name of the candidate for president, and within such rectangular space, shall be printed the words: ‘For President.’ Immediately below the name of the candidate for president and above the name of the candidate for vice-president, within the same rectangular space, shall be printed the words: ‘For Vice-President.’ One blank rectangular space shall be printed at the left of the enclosed rectangular space in which the names of the candidates for and the titles of the offices of president and vice-president are printed.
 

 “The order in which the party column of each political party, which may lawfully be printed on the presidential ballot at an election, shall be printed from left to right thereon, shall be the same relative order as the order in which the party columns of the same political parties are printed on the party column ballot for the same election.”
 

 The petition seeks a writ to compel the respondent to follow the foregoing section in respect of Wallace and Taylor.
 

 It is conceded in the majority opinion that the names of Messrs. Wallace and Taylor may not be printed on the presidential ballot under the provisions of Section 4785-107, General Code. If that be so, and it is so, then how will the votes for relators be counted ?
 

 Section 4785-1314a, General Code, provides that, in marking a presidential ballot, the voter shall observe the following rules:
 

 “He shall either place ‘X’ in the blank rectangular space at the left of the space in which are printed the names of the candidates for the offices of president and vice-president for whom he desires to vote, or place ‘ X ’ in the circular space above such names. Such ballot will be considered and counted as a vote for
 
 *157
 
 each of the candidates for election as presidential elector who were nominated as such at the state convention of the same political party as the political party at whose national convention the persons were nominated as candidates for the offices of president and vice-president at the left of, or above, whose names on the presidential ballot the voter placed ‘X,’ and whose nominations as candidates for presidential elector were certified to the Secretary of State as required by Section 4785-74 of the General Code.”
 

 Relators do not ask that their names as candidates for electors be placed upon the ballot. They seek only to have the names of Messrs. Wallace and Taylor (see note hereinafter) printed upon the ballot as if they were the candidates of political parties and thus to become symbolic of the list of relators, with a vote cast for the symbol to be counted for names on file in the office of the Secretary of State.
 

 In case of their election and a vacancy occurred among them at the time of the meeting of presidential electors provided in Section 4785-160, General Code, how would the vacancy be filled?
 

 Section 4785-160, General Code, provides for the meeting and organization of presidential electors who were elected at the preceding general election.
 

 The following provision of Section 4785-74, General Code, explains the state convention above referred to:
 

 “In the year 1948 and in each fourth year thereafter, each political party in the state shall hold a state convention composed of delegates and alternates who shall be elected as such at the primary election held in each of such years. The state central committee of each such political party shall fix the time and place for holding the conventon of its party.”
 

 Section 4785-61, General Code, defines a political party as follows:
 

 
 *158
 
 “A political party within the meaning of this act shall be any group of voters which, at the last preceding general state election, polled for its candidate for governor in the state at least ten per cent of the entire vote cast therein for governor; or which shall have filed with the Secretary of State at least ninety days before an election a petition signed by qualified electors equal in number to at least fifteen per cent of the total vote for governor at the last preceding election, declaring their intention of organizing a political party, the name of which shall be stated in the declaration, and of participating in the next succeeding election. Such petition shall be circulated, signed, verified, and the signatures thereon examined and certified to in the same manner as is required of referendum petitions. No such group of electors shall assume a name or designation which shall be so similar, in the opinion of the Secretary of State, to that of an existing political party as to confuse or mislead the voters at an election. When any political party fails to cast ten per cent of the total vote cast at an election for the office of governor it shall cease to be a political party within the meaning of this act. ’ ’
 

 It is to be noted that under the law as it now stands, a political party within the meaning of the election laws of this state shall he any
 
 group
 
 of voters which at the last preceding general state election polled at least ten per cent of the entire vote cast therein for governor. It will not be necessary to determine whether under the election laws in effect prior to January 1, 1948, the word, “group,” might be given a definition separate from that of a political party. Clearly under the election laws of this state as they now stand, a group is included within the term, “party,” and only a party may now have a place on the ballot. The records in these cases show we are not dealing with any party or group which has complied
 
 *159
 
 with the laws of Ohio necessary to secure a place on the presidential ballot.
 

 It, therefore, becomes unnecessary to pass upon the various questions raised under Section 4785-100a, General Code, and the appeal from the finding of the Secretary of State in case No. 31498 should be dismissed.
 

 While a dismissal-would ordinarily result, in effect, in the affirmance of the findings of the Secretary of State, it should be understood that the dismissal in this case is a formality only, and the court does not pass upon the holdings made by the Secretary of State or the questions raised in respect thereof.
 

 Further as to the case No. 31496 which seeks a writ of mandamus directing the Secretary of State to place upon the ballot to be voted at the coming general election the names of Messrs. Wallace and Taylor as independent candidates, respectively, for president and vice-president and to file the petitions of relators; the short answer, which will be elaborated later, is that there is no such duty resting upon the Secretary of State. The majority opinion grants a writ commanding the Secretary of State to place the names of
 
 relators
 
 on the ballot. Relators do not seek this relief. (See note.)
 

 Section 12283, General - Code, defines mandamus as follows:
 

 “Mandamus is a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.”
 

 Outside of the disqualification for such office of certain persons named in Section 1 of Article II above, there is no limitation placed upon the direction of the manner in which the appropriate number of electors are appointed by the state.
 

 
 *160
 
 Section 4785-107, General Code,
 
 supra,
 
 provides the form and arrangement of the presidential ballot as follows:
 

 “On the presidential ballot shall be printed the names of the candidates for election to the offices of president and vice-president of the United States, nominated as snch by the national conventions of those political parties to which delegates and alternates were elected at the next preceding primary election.”
 

 The writ is also sought to compel the Secretary of State to print upon the presidential ballot a blank rectangular space at the left of the space in which the names of Henry A. Wallace and Glen H. Taylor appear whereby the voter by placing an “X” in such blank rectangular -space may be considered to have voted for the list of candidates for electors submitted by relators. The only justification for a presidential ballot, its form and arrangement is to be found in Section 4785-107, General Code,
 
 supra.
 
 It should-need no citation of authority to convince that a place upon the presidential ballot is conditioned upon compliance with the terms of the statute. The record clearly shows that the terms of Section 4785-107, General Code, have not been complied with.
 

 The briefs contain an argument on the ground of “democracy.” Such an argument serves to obfuscate rather than to clarify the issues before us.
 

 The Constitution of the United States does not mention the word, “democracy.” On the contrary, Section 4 of Article IV of that Constitution, guarantees to every state in the Union a republican form of government which means that while the sovereign power resides in the electorate, the electorate exercises such power through chosen representatives. While the federal Constitution authorizes a state to appoint the electors, in such manner as the legislative body of the state may direct, relators have assumed
 
 *161
 
 that ■ they may take advantage of sections of law providing for the placing upon the state ticket the names of independent candidates. Even so, they have not complied with the election laws for independent state candidates as will be shown below.
 

 In the case of
 
 State, ex rel. Hawke,
 
 v.
 
 Myers, Secy. of State,
 
 132 Ohio St., 18, 4 N. E. (2d), 397, it is said, in the
 
 per ctiriam
 
 opinon:
 

 “Section 1, Article II, U. S. Constitution, vests the Legislature with authority to direct the manner in which presidential electors shall be appointed, and as there is no provision' in the Ohio Constitution limiting the exercise of that delegated power, Sections 4785-107 and 4785-108, General Code, are not unconstitutional. ’ ’
 

 In the ease of
 
 McPherson
 
 v.
 
 Blacker, Secretary of State (Michigan)
 
 146 U. S., 1, 36 L. Ed., 869, 13 S. Ct., 3, it was held in an opinion written by Mr. Chief Justice Puller and as summarized in the headnotes of the Lawyers’ Edition as follows:
 

 “4. The Constitution does not provide that the appointment of electors shall be by popular vote, nor that the electors shall be voted for upon a general ticket, nor that the majority of those who exercise the elective franchise can alone choose the electors. It recognizes that the people act through their representatives in the legislature, and leaves it to the legislature exclusively to define the method of effecting the object.
 

 “5. The appointment and mode of appointment of electors belong exclusively to the states under the Constitution of the United States.”
 

 In the course of the opinion Mr. Chief Justice Puller said at page 28 (page 875 L. Ed.):
 

 “The Journal of the Convention discloses that propositions that the President should be elected by ‘the citizens of the United States,’ or by the ‘people,’ or
 
 *162
 
 ‘by electors to be chosen by the people of the several states,’ instead of by the Congress, were voted down.”
 

 The petition contains the allegation:
 

 “Relators [who are the candidates for election as electors] further aver that- they and each of them are independent candidates for election to the said offices, not being candidates of political parties for election to said office or offices.”
 

 Relators in their petition summarize the position of respondent as follows:
 

 “Relators further say that the respondent refused to accept, file and process said nominating petitions, as provided by law, because he contends that the election laws of Ohio prohibit the placing on a presidential ballot, or any other ballot to be voted on at the general election to be held on November 2, 1948, of the names of candidates for president and vice-president of the United States, who, or the independent candidates for election as state presidential electors of Ohio for 1948, representing them, were nominated by independent nominating petitions and that independent candidates for election as presidential electors of the state of Ohio for 1948 may not be nominated by independent nominating petitions; that the only candidates for president and vice-president of the United States (or the candidates for presidential electors representing said candidates) whose names may be submitted to the electorate of Ohio are restricted and confined to those persons nominated as candidates for election to the office of president and vice-president of the United States by the national conventions of those political parties to which delegates and alte'rnates were elected at the next preceding Ohio primary election and that the only persons who may be candidates for presidential electors in Ohio are those who are nominated as candidates for elec
 
 *163
 
 tion as presidential electors at a state convention of a political party.”
 

 The position of the respondent as above outlined in relators ’ petition is correct and such petition is, therefore, demurrable. (See note.)
 

 Belators’ erroneous theory is further illustrated by the following quotation from relators’ petition.
 

 “Belators further aver that the election laws of Ohio, taken
 
 in pari materia,
 
 do not exclude the right of persons to be independent candidates for presidential electors of the state of Ohio.”
 

 It is unnecessary to point out any exclusion of such candidacies but it is necessary to point out the specific direction of the General Assembly for the manner of appointment of presidential electors.
 

 Belators further argue in their petition: “* * • insofar as they [election laws of Ohio] prohibit any person having the qualifications of an elector from being an independent candidate for said office of presidential elector, are unreasonable, arbitrary, and unconstitutional under Article I, Section 2, Article V, Section 1, and Article XV, Section
 
 4
 
 of the Constitution of the State of Ohio and 5th and 14th Amendments of the Constitution of the United States.” The foregoing sections are not relevant to the question here under consideration.
 

 If relators had not made the false assumption as to their rights under a democracy, they might have pursued the Constitution of the United States further and thus have found the clear provision of Section 1, Article II of the Constitution, in respect of the manner of appointment of presidential electors.
 

 In the majority opinion it is said:
 

 “The relators have taken all the preliminary necessary steps for their nomination as presidential electors.”
 

 We believe that we have demonstrated that relators
 
 *164
 
 have not taken the preliminary necessary steps for their nomination as presidential electors.
 

 Pursuing the same paragraph in the majority opinion it is said: “Presidential electors are state officers.” And then attention is called to Section 4785-91, General Code, and the paragraph is ended with the question: “In this curious situation how must the statutes be interpreted?” If- the statutes be properly interpreted, there will be no “curious situation.”
 

 The only duty placed upon presidential electors is to be found in the 12th Amendment to the federal Constitution, to wit:
 

 “The electors shall meet in their respective states, and vote by ballot for president and vice-president, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as president, and in distinct ballots the person voted for as vice-president, and they shall make distinct lists of all persons voted for as president and of all persons voted for as vice-president, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United. States, directed to the president of the Senate. The president of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted. The person having the greatest number of votes for president, shall be the president, if such number be a majority of the whole number of electors appointed; and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as president, the House of Representatives shall choose immediately, by ballot, the president. But in choosing the president, the votes shall be taken by states, the
 
 *165
 
 representation from each state having one vote; a quorum for this purpose shall consist of a member or members from two-thirds of the states, and a majority of all the states shall be necessary to a choice.
 

 But if we were to assume, as does the majority, that a presidential elector is a state officer and comes within the ambit of Section 4785-91, General Code, then we propound the question: What authority in the laws of this state is there for an omnibus nominating petition or for nominating Henry A. Wallace for president of the United States and Glen H. Taylor for vice-president of the United States?
 

 Like Abou Ben Adhem’s, Mr. Wallace’s name leads all the rest on the petition. Yet the majority opinion acknowledges that there is no authority for the names of Messrs. Wallace and Taylor to be on the petition. There is no authority in law for the filing of a nominating petition for more than a single candidate. For this reason alone the petitions if otherwise proper would not be good under Section 4785-91, General Code.
 

 Since the- decision in the case of
 
 State, ex rel. Ach,
 
 v.
 
 Butterfield et al., Board of Elections,
 
 122 Ohio St., 618, 174 N. E., 253, the election laws have been changed.
 

 Paragraph
 
 Tc
 
 of Section 4785-3‘, General Code, as enacted in 113 Ohio Laws, 308, provided:
 

 “The term ‘independent group’ shall mean any organization or group of voters, which nominates a candidate or
 
 candidates
 
 for office by petition to be voted for at an election, and which is
 
 not a party as
 
 hereinafter defined.” (Italics ours.)
 

 The quoted provision of this section is no longer to be found in the election laws.
 

 Under the present election laws, as above pointed out, the word, “group,” has no other meaning than “party.”
 

 
 *166
 
 Section 4785-100, General Code (113 Ohio Laws, 353), was relied upon in the
 
 Butterfield ease.
 
 That section has also been repealed.
 

 There is, therefore, no authority for omnibus or blanket nominating petitions.
 

 . Who is it that can say that without the names of Wallace and Taylor on the petition, the electors of this state would have signed the omnibus nominating petition for the 25 other named candidates? Again, where multiple candidacies for the General Assembly are authorized, may an omnibus petition be used for either or both senators or members of .the House of Representatives to the General Assembly where more than one office is to be filled?
 

 Again, in certain years two county commissioners are to be elected. May a common nominating petition be used to nominate both of them? The answer, of course, to each of the foregoing queries is in the negative. Yet, what does the majority propose to do? In the first place, they recognize the right of 25 different candidates to present a single nominating petition. They propose to delete from that petition the names of Messrs. Wallace and Taylor. They propose to grant not the prayer of relators’ petition but something entirely different. For the form of the writ which the majority proposes to issue there cannot be found within the laws of Ohio any act which enjoins upon the Secretary of State a duty resulting from his office.
 

 The strongest claim of relators to the writ is contained in the following allegation of their petition: “Relators further aver that the election laws of Ohio, taken
 
 in pari
 
 materia, do not exclude the right of persons to be independent candidates for presidential electors of the state of Ohio.”
 

 If ' such a claim points to a law which specially
 
 *167
 
 enjoins a duty resulting from an office, trust or station, then we do not understand the proceedings in mandamus as prescribed by the laws of Ohio.
 

 No one has been deprived of his right to vote. No one has been deprived of his right to seek, in a proper manner, the nomination of a candidate. Belators have neglected to follow the method prescribed by the General Assembly.
 

 We stand for the liberal construction of election laws but not for supplementing or supplanting those laws by judicial legislation.
 

 We cannot emphasize too strongly that what relators pray for in their petition is not a writ to place the names of their candidates for electors upon the ballot. (See note.) In this respect it is prayed that the Secretary of State shall be required to receive and file the petitions. So far as concerns the ballot itself, what the relators seek is to have the names of Henry A. Wallace, candidate for president of the United States, and Glen H. Taylor as a candidate for vice-president of the United States, printed upon the presidential ballot and that all votes for Wallace and Taylor shall be counted and considered as a vote for each of the relators as candidates for election as presidential electors of the state of Ohio for 1948. The position taken by the relators is ridiculous when considered under the laws of this state.
 

 The writ should be denied.
 

 Note: After the foregoing dissenting opinion was prepared a majority of the court granted the relators leave (requested at the close of arguments) to amend their petition by adding to the prayer thereof the following words:
 

 “including a writ commanding the respondent to accept, file and process said nominating petitions
 
 and print on the proper ballot at the general election of
 
 
 *168
 

 November 2, 1948, the names of the relators as independent candidates for presidential electors.”
 
 (Italics ours.)
 

 No demand was made upon the Secretary of State to print the names of the candidates on either ballot and no refusal by the Secretary of State to do so has been shown. However, acknowledging the realities, in all probability the Secretary of State would have declined to comply prior to the issuance of a writ. Accepting the amendment as allowed, we see no reason for revising the foregoing dissent as we are still of the opinion that case No. 31498 should be dismissed and that the writ of mandamus should be denied in case No. 31496. At appropriate places in the dissent we have directed attention to this note.
 

 Turner, J.